*E-Filed 1/18/2011*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANNA VERTKIN, | No. C 10-0775 RS |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FEDERAL CLAIMS WITH PREJUDICE, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION** |
| v. | |
| WELLS FARGO HOME MORTGAGE, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Defendant Wells Fargo moves to dismiss Anna Vertkin's First Amended Complaint ("FAC"), where she alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), noncompliance with the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedure Act ("RESPA"), and myriad other violations of state statutory and common law.  Named as defendants are Wells Fargo, First American Loanstar Trustee, and Frank Allen Howard Realtors.  On March 17, 2010, First American Loanstar Trustee filed a statement of non-monetary status, which Vertkin did not oppose.  Although counsel for Frank Allen Howard Realtors has made an appearance in this case, that party did not join in Wells Fargo's motion and has not participated in this litigation.

In September of 2010, this Court dismissed Vertkin's original complaint in its entirety. In its original motion to dismiss, Wells Fargo informed the Court that Vertkin was at that time in the midst of bankruptcy proceedings.[1] Vertkin had not listed this civil suit as an asset in her bankruptcy schedule, even though a portion of the conduct described in her Complaint occurred prior to initiation of bankruptcy proceedings. Accordingly, Wells Fargo argued her complaint should be dismissed because, as a debtor, Vertkin lacked standing to bring claims belonging to the estate. In the alternative, Wells Fargo contended that Vertkin was estopped from bringing a civil claim omitted from her bankruptcy schedule. Vertkin filed the FAC on October 21, 2010 and Wells Fargo moved to dismiss. Wells Fargo repeats its standing and estoppel arguments, and insists also that the FAC should be dismissed for failure to state a plausible claim for relief. As explained below, Wells Fargo's motion will be granted. Vertkin has, despite repeated attempts, failed to state a facially plausible federal claim. As further amendment would be futile, leave to amend is not warranted. The Court declines to exercise supplemental jurisdiction over Vertkin's remaining state law claims, and these shall be dismissed without prejudice. This matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

## II.  FACTUAL BACKGROUND

1. <u>The 2005 Loan</u>

In 1994, Vertkin and her former husband, Michael Verktin, purchased property at 160 Rose Avenue in Mill Valley. The crucial date for purposes of this litigation, however, is September of 2005, when Anna and Michael Vertkin obtained a loan in the amount of $950,000 secured by a Deed of Trust on the Rose Avenue property. American Brokers Conduit acted as the original lender, First American Title acted as trustee, and Mortgage Electronic Registration Systems ("MERS") acted as beneficiary.[2] In November of 2005, Wells Fargo purchased rights to the note and assumed the role of lender.

---

[1] Wells Fargo introduced, and the Court took judicial notice of, a print-out of the electronic docket in Vertkin's underlying bankruptcy proceeding, case number 08-12189.
[2] First American Loanstar Trustee Services (a defendant in this case) apparently was substituted as trustee on October 19, 2009.

NO. C 10-0775 RS
ORDER

2

### 2. Default and Foreclosure

In 2006, the Vertkins divorced. Michael Vertkin left the property. In November of 2007, the Rose Avenue property caught fire and sustained serious damage. Vertkin suspected arson, and complains Wells Fargo failed to investigate. In October of 2008, Vertkin filed for Chapter 7 bankruptcy protection. By the autumn of 2009, she had defaulted on her loan with Wells Fargo. On March 8, 2009, Wells Fargo filed a motion in Vertkin's bankruptcy proceedings to lift the automatic stay, at least as it applied to the Rose Avenue property. Its motion was granted, and on September 6, 2009, Wells Fargo and First American took possession of the property under the authority of a judicial order allowing foreclosure. On September 25, 2009, Michael Vertkin relinquished his interest in that property. Vertkin contends she first learned of the impending foreclosure in mid-October of 2009. She contacted Wells Fargo to discuss foreclosure alternatives, but to no avail. A Notice of Trustee Sale was recorded on January 5, 2010, and the property was sold at a public auction later that month. Bank of America purchased the property. Vertkin characterizes the auction as a "sham" transaction. She contends the auction took place a half hour earlier than the time at which it was officially scheduled and in a different location. She alleges, in addition, that Wells Fargo failed to review mortgage documents prior to the sale.

### 3. Bankruptcy Proceeding

As indicated above, Vertkin initiated her bankruptcy proceeding on October 16, 2008 in this District. In addition to that matter, Vertkin filed various other adversary proceedings in the bankruptcy court (as well as complaints in various state and federal courts). She initiated one suit alleging misconduct amounting to "treason" against the individuals involved in the underlying bankruptcy matter, including the presiding judge. On July 22, 2010, the court presiding over her original bankruptcy proceeding declared Vertkin a "vexatious litigant." As a result, she was barred from filing subsequent complaints. On September 16, 2010, the bankruptcy court declined to discharge Vertkin's debt and closed the action.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 of the Federal Rules of Civil Procedure further provides that to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The first part of this requirement—"a short and plain statement of the claim"—cannot be read without reference to the second part—"*showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The Supreme Court has made clear that while "showing" an entitlement to relief does not require "detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citations omitted).

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## IV.  DISCUSSION

1.  <u>Judicial Notice</u>

Judicially noticeable facts are those whose "existence is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Lyon v. Gila River Indian Cmty*, 626 F.3d 1059, 1075 (9th Cir. 2010) (*quoting W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n.4 (9th Cir. 2008)). Wells Fargo asks the Court to take judicial notice of the court docket and the record in Vertkin's bankruptcy proceeding. The existence of a bankruptcy proceeding is a matter of public record. 11 U.S.C. § 107(a) ("[A] paper filed in a case under [the Bankruptcy Code] and the dockets of a bankruptcy court are public records."). Of

1  particular relevance is the Order, dated September 16, 2010, declining to discharge Vertkin's debts
2  and terminating the case. It, similarly, is a public document and its contents are not subject to
3  dispute. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008).

Upon Wells Fargo's request, the following facts are also appropriately judicially noticed: the Deed of Trust was recorded on September 2, 2005; a Notice of Default was recorded on October 1, 2009; and a Notice of Trustee Sale was recorded on January 5, 2010.

### 2. Bankruptcy Proceeding

Wells Fargo renews the same standing and estoppel arguments it advanced in its motion to dismiss Vertkin's original Complaint. As noted above, on September 16, 2010, the bankruptcy court declined to discharge Vertkin's debts, citing 11 U.S.C. sections 727(a)(2), (5) and (6)[3] and terminated the action. Vertkin obtained no relief whatsoever and remains liable for her debts. Wells Fargo presents no authority to support the proposition that a debtor's failure to schedule a civil suit bars her from bringing it following a *denial* of discharge.

### 3. RICO

Wells Fargo moves to dismiss Vertkin's claim for civil damages in light of defendants' alleged racketeering behavior. "RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482 (1985) (*quoting* 18 U.S.C. § 1961(1)). Section 1962, outlining "Prohibited Activities," outlaws the use of income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting

---

[3] 11 U.S.C. section 727 provides that a court "shall grant the debtor a discharge" unless one of several enumerated exceptions apply. The exceptions on which the bankruptcy court relied read as follows: (a)(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) the property of the debtor . . . .; or (B) the property of the estate . . . ; (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; and (6) the debtor has refused in the case—(A) to obey any lawful order of the court . . . ."

1 interstate commerce; the acquisition or maintenance of any interest in an enterprise "through" a
2 pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a
3 pattern of racketeering activity; and conspiring to violate any of these provisions. *Id.* at 482-83. A
4 "pattern of racketeering activity" involves at least two predicate acts of racketeering activity, as
5 defined in 18 U.S.C. § 1961(1), within a period of ten years. 18 U.S.C. § 1961(5). Under RICO's
6 civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a
7 violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and
8 shall recover threefold the damages he sustains and the cost of the suit, including a reasonable
9 attorney's fee . . . ." 18 U.S.C. § 1964(c).

10 Vertkin entirely fails to state a colorable RICO claim. She at no point even specifies the
11 predicate racketeering acts on which she relies. Section 1961(1) defines activities that constitute
12 "racketeering" activity and Vertkin must allege at least two.[4] The bulk of her allegations against
13 Wells Fargo constitute vague averments that it failed to "review" mortgage documents, failed to
14 modify her loan obligation, or possibly entered into "secret stipulations" designed to effectuate
15 foreclosure. What she does not do is explain how any of these activities are actionable, let alone
16 examples of racketeering activity as statutorily defined.

17 Vertkin also fails to plead facts suggestive of an "enterprise." An enterprise is a "group of
18 persons associated together for a common purpose of engaging in a course of conduct," and is
19 proved by evidence of "an ongoing organization, formal or informal, and by evidence that the
20 various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583
21 (1981). It is not clear from the FAC *which* parties Vertkin contends comprised the "enterprise." A
22 broad reading suggests she means to link Wells Fargo in a conspiracy of sorts with the people and
23 entities involved in foreclosure: Bank of America, Vertkin's former husband, and the bankruptcy
24 trustee. All she has done is locate parallel conduct: she states that a debtor (Michael Vertkin)
25 contributed to a default, a lender (Wells Fargo) pursued its contractual right to foreclose on a deed

---

[4] At one point, Vertkin notes she suspects arson caused the Rose Avenue fire. While arson would be a predicate act under the statute, Vertkin never alleges Wells Fargo was involved in the fire. Her claim is actually that the lender neglected to investigate the possibility that such a crime occurred.

NO. C 10-0775 RS
ORDER

6

of trust, a bankruptcy trustee abandoned its interest in the property, and another entity (Bank of America) purchased the property at auction. These, however, are actions suggestive not of a cohesive unit, but of separate entities engaged in California's non-judicial foreclosure process. While Vertkin's FAC *concludes* the parties acted in concert to harm her, it does not include any facts plausibly indicative of anything more than lawful parallel conduct. This is not enough. *See Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy . . . : it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief.")

Despite a second attempt to augment her complaint, Vertkin has failed to allege any relevant facts to support her RICO claim. This is not to say Vertkin's pleadings lack plentiful alleged "facts" that may reflect a claim of some kind against some party, but a civil RICO claim against these defendants is not one of them. As *Twombly* instructs, a plaintiff must "allege facts" that, taken as true, are "suggestive of illegal conduct." 550 U.S. at 564 n.8. Vertkin has failed to do so here and her RICO claim must be dismissed, without leave to amend.[5]

4. TILA and RESPA Claims

Although Vertkin's FAC mentions "TILA and RESPA acts violations," (FAC, 1:21-22), she never articulates *what* violations allegedly occurred, or *which* defendant committed them. Aside from the introductory summary of her claims, she mentions these two statutes only once more in the FAC. When she does, it is in a discussion of the origination of the 2005 loan: "American Brokers Conduit," she writes, "issued predatory loans in negotiation with Michael Vertkin . . . in violation of TILA, RESPA, and other HUD requirements." (FAC, 3:2-3.) American Brokers Conduit is not a defendant in this case, nor does Vertkin explain how or why its alleged TILA or RESPA violations

---

[5] Although Frank Allen Howard Realtors has not joined in Wells Fargo's motion, Vertkin's FAC similarly fails to allege a facially plausible RICO claim against that entity. The FAC mentions Frank Allen Howard Realtors a single time: "Dr. Vertkin did not default on the loan. Trustee in agreement with Michael Vertkin and his attorneys and Frank Howard Allen [R]ealtors caused breach of lease contract, allegedly obtained mortgage and title insurance on the property and caused destruction of property meanwhile refusing to pay the mortgages as agreed in writing." (FAC, 6L9-13.) The passage appears to provide an explanation for how the default occurred, and suggests that the Realtor in some unexplained way undermined a rental arrangement. That allegation presents no plausible RICO violation.

can be imputed to an actual defendant. Vertkin's TILA and RESPA claims are accordingly dismissed, without leave to amend.

   5. Supplemental Jurisdiction

Plaintiff's remaining claims arise under state law. Indeed, the heart of Vertkin's case focuses on what she believes was a procedurally improper foreclosure process. The exercise of supplemental jurisdiction under 28 U.S.C. section 1367 is discretionary, and there is no reason to exercise that discretion here. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction"); *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) ("Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims . . . ."). The non-judicial foreclosure process in California is a creature of state law and it is appropriate to direct Vertkin's claims, should she choose to pursue them, to a state tribunal. Accordingly, plaintiffs' state law claims are dismissed, without prejudice.

## V. CONCLUSION

For the reasons stated above, Vertkin's federal claims must be dismissed, without leave to amend. The Court declines to exercise supplemental jurisdiction over her claims arising under state law, and these are accordingly dismissed without prejudice.

Dated: 1/18/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE